UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:23-cr-00165-KJM |
| Plaintiff, | ORDER |
| v. | |
| Esteban Xavier Monroy, | |
| Defendant. | |

Defendant Esteban Monroy moves to dismiss the indictment based on the longstanding lack of funding to pay the attorney appointed to represent him under the Criminal Justice Act during the recent government shutdown. As explained in this order, the court concludes Mr. Monroy's constitutional right to counsel was violated but finds dismissal would be an inappropriate remedy for that violation. The motion is **granted in part and denied in part**.

**I.     BACKGROUND**

This case began in June 2023, when the government filed a criminal complaint alleging Mr. Monroy had possessed a handgun and heroin in violation of federal gun and drug laws. *See* Crim. Compl. at 1 (citing 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1)), ECF No. 1. A grand jury returned an indictment the next month. ECF No. 13. In addition to forfeiture allegations, the indictment included three charges: (1) possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm by a person previously convicted of a felony in

violation of 18 U.S.C. § 922(g)(1); and (3) possession of a firearm in furtherance of a drug trafficking offense in violation of § 922(c). *Id.* In October 2024, after the court denied Mr. Monroy's motion to dismiss count two, he pled guilty to count one, and the court set a date for trial of the remaining two charges. *See* Mins., ECF No. 40. Before the trial, however, a grand jury returned a superseding indictment, filed in February 2025. ECF No. 44. The superseding indictment included a new drug charge—possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1)—in addition to the two remaining firearm charges. *Id.*

Mr. Monroy originally was represented by counsel in the Office of the Federal Defender. In July 2025, the Assistant Federal Defender assigned to Mr. Monroy's defense left the office, and given its high caseloads, the Federal Defender determined it was necessary to reassign this case to counsel on the panel of attorneys accepting appointments under the Criminal Justice Act (CJA), Shari Rusk. *See* Motion & Order Substitute, ECF No. 58. The court appointed Ms. Rusk to represent Mr. Monroy on July 28, 2025, effective retroactively to July 9, 2025. *Id.* The court previously had confirmed a trial date of November 3, 2025. Trial Conf. Order, ECF No. 53. After Ms. Rusk's appointment, however, the court held a status conference and directed the parties to meet and confer as to a realistic trial schedule given the new counsel, and set a further status conference, which the court ultimately continued to November 18, 2025 based on the parties' stipulation. Mins., ECF No. 61.

Before the status conference, in October 2025, Ms. Rusk filed a motion to dismiss the indictment on Mr. Monroy's behalf, citing the court's "supervisory powers." Mot. Dismiss at 9, ECF No. 64. She represented she has never been paid on this matter, although she did not recall if she had submitted vouchers; she also said she could not "obtain the services of an investigator, expert or paralegal without any compensation," and she could not "get up to speed on this complicated case with the current federal shutdown and no real end in sight." *Id.* at 1–2. The government opposes the motion; it argues counsel does not face a conflict of interest that could establish a violation of the Sixth Amendment, dismissal is not an available remedy, and the court should not employ its inherent powers as Mr. Monroy argues it should. ECF No. 66. After the parties completed this briefing, Congress passed and the President signed a continuing resolution

2

1  that provided funding for both outstanding payments to CJA panel attorneys and ongoing
2  operations. *See United States v. Salanoa*, No. 24-0063, at *1 (E.D. Cal. Nov. 17, 2025). The
3  court took the matter under submission after holding a hearing on November 18, 2025, at which
4  Raymundo Cardenas appeared for the United States, and Shari Rusk appeared for Mr. Monroy.

## II.   LEGAL STANDARDS

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits" under Federal Rule of Criminal Procedure 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (alterations in original) (quoting *United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)).

"[C]ourts also possess inherent supervisory authority to remedy serious structural defects in the criminal process and the judicial power to dismiss indictments in extreme cases under this supervisory authority." *United States v. Ortiz*, No. 24-00302, 2025 WL 3157821, at *2 (E.D. Cal. Nov. 12, 2025) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006); *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010); and *United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992)). "The Court has inherent supervisory powers to order the dismissal of prosecutions for three reasons: '(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'" *Salanoa*, 2025 WL 3208520, at *2 (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995)). "A court may dismiss an indictment under its supervisory powers only when the defendant suffers 'substantial prejudice' and where 'no lesser remedial action is available.'" *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (first quoting *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988), then quoting *United States v. Barrera–Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991)).

### III. DISCUSSION

At the outset, the court notes its conclusion that the motion and underlying issue are not moot. An issue is not moot, despite changed circumstances, if it is so inherently transitory that it is "distinctly capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (quotation marks omitted). The claim in question here concerns a temporary lapse in funding, which was "almost certain to run its course" before the court could consider it, and it is reasonable to expect funding lapses to occur again in the future. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010); *see also United States v. Ortiz*, No. 24-00302, 2025 WL 3514160, at *1 (E.D. Cal. Dec. 8, 2025) ("CJA funding has only temporarily been restored through the end of January 2026.").

The parties have cited no controlling appellate decision addressing whether a district court can or should dismiss an indictment in circumstances such as these, and the court is aware of no such authority. *See Ortiz*, 2025 WL 3157821, at *1 (describing this issue as one "of first impression with no known appellate court precedent"). Federal district court judges, including those within this district, have reached inconsistent decisions in at least three recent orders.

First, in *United States v. Vasquez*, the court denied a defendant's motion to dismiss. *See* No. 25-135, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025). The court held (1) there is no constitutional right to compensation for court-appointed counsel in these circumstances; (2) counsel had not been denied compensation, but rather compensation had been deferred; (3) the record did not show appointed counsel faced a conflict of interest that violated the defendant's Sixth Amendment rights; and (4) the limited persuasive authority did not support the defendant's motion, and no federal court had ever found "the delayed reimbursement of CJA-appointed defense counsel constituted a violation of a defendant's Sixth Amendment right to counsel." *Id.* at *8; *see also United States v. Phill*, No. 25-00162, 2025 WL 3251317, at *4 (E.D. Cal. Nov. 21, 2025) (finding no Sixth Amendment violation because counsel had provided effective assistance despite the lack of funding).

Second, in *United States v. Ortiz*, the court found the lack of funding had effectively deprived the defendant of "effective assistance of counsel." 2025 WL 3157821, at *3. Trial was

4

only ten weeks away, and "defense counsel [found] herself in the impossible position of needing to provide effective representation to Defendant without the ability to pay for the resources required to do her job." *Id.* The court declined to adopt the reasoning in *Vasquez* because it focused "primarily on defense counsel rather than on the Defendant and the impact on him caused by the Government's Sixth Amendment violation." *Id.* at *4. "The issue here is one of a violation of a Defendant's right to adequate representation, not an attorney's right to payment." *Id.* The court found no lesser remedy than dismissal would provide the defendant with relief and dismissed the indictment without prejudice. *Id.* The court administratively stayed its order, however, and as noted above, Congress soon passed a continuing resolution and the President signed it. The government moved to reconsider, citing the continuing resolution, but the court reaffirmed "dismissal without prejudice is the appropriate remedy given [the defendant's] rapidly approaching trial date and his inability to prepare at all for trial, as well as the unprecedented and potentially ongoing CJA-funding crisis." 2025 WL 3514160, at *1.

Third, in *United States v. Salanoa*, the court reviewed the history of a defendant's right to counsel in federal proceedings and the legislative history of the Criminal Justice Act of 1964. *See* 2025 WL 3208520, at *3–4. The court found the "legislative history [was] clear," i.e., "that Congress believed adequate compensation was necessary to ensure an adequate defense." *Id.* at *3. The court also found "the right to counsel is meaningless without sufficient resources to mount an effective defense." *Id.* The circumstances had thus prejudiced the defendant: "in order to prepare their clients' defense, criminal defense attorneys must undertake vital tasks such as reviewing discovery, conducting investigations, preparing trial strategy, and hiring experts." *Id.* "Moreover, despite payment for CJA counsel having stopped in July," the court observed, "the Government's prosecution efforts have continued unabated since that time." *Id.* at *5. And so, "while Defendant's Counsel was not receiving money to pay investigators, staff, and himself, the Government was able to fully engage in continued investigation and trial preparation efforts without barriers." *Id.* The court declined to dismiss the indictment, however, given the passage of the continuing resolution. *See id.* The court found that "permitting Defendant's Counsel whatever additional time is necessary for him to provide his client with adequate representation is

the appropriate remedy." *Id.*; *see also United States v. Vasquez*, No. 24-0079, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025) (reasoning similarly in similar case).

This court agrees with the general principles laid out in the court's persuasive order in *Salanoa*. Criminal defendants are entitled to the effective assistance of an attorney, not an attorney's appearance in name only. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). At some point, after too long without any funding for investigative and other related resources, and without compensation for their time, attorneys can no longer provide constitutionally effective assistance. *See id.* at *4. "While it is true that there is a 'presumption that the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand,' that presumption is inapplicable where there is a systematic failure to pay significant sums of money that were promised by the Government." *Id.* (quoting *United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017)). The history and structure of the Criminal Justice Act of 1964 shows Congress understood this and "believed adequate compensation was necessary to ensure an adequate defense." 2025 WL 3208520, at *3. The system of pro bono representation had suffered from "shortcomings," so Congress "developed an elaborate system of paid, court-appointed representation." *Id.* at *3–4.

In some circumstances the lack of funding may become so severe, so prejudicial and so irreversibly hobbling to a defendant's case that dismissal may be the only effective remedy. It is not necessary to decide now where exactly that line should fall. Here, counsel has not demonstrated the lack of funding had such a prejudicial effect, in this case in which the court has not set a new trial date. There is no declaration, for example, laying out the practical consequences of a longstanding lack of funding for preparation of defendant's case for trial or change of plea, such as by identifying expert support, or deploying other "basic tools" of an effective defense. *See, e.g.*, *Ortiz*, 2025 WL 3157821, at *3; *cf. Phill*, 2025 WL 3251317, at *4 (E.D. Cal. Nov. 21, 2025) (finding no Sixth Amendment violation because "at the time [counsel] accepted the appointment . . . , she was aware that CJA payments had already stopped being processed and were not expected to resume . . . [and] [t]he pending motion was filed only six days

after [the] expected payment date passed" and because counsel "made do under the circumstances").

## IV. CONCLUSION

For the reasons above, the court finds the motion to dismiss is not moot but denies that motion without prejudice to renewal, i.e., if funding once more becomes unavailable and defendant can demonstrate, with evidentiary support, that lack of funding has deprived him of the effective assistance of counsel.

IT IS SO ORDERED.

DATED: December 17, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE